UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

WILLIAM JOSEPH MADDEN                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:16-CV-P21-GNS

JAILER LARRY PIPER et al.                                              DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the motion for summary judgment filed by Plaintiff (DN 121) and the

motion for summary judgment filed by Defendants Francis, Hollars, Pardue, Pierce, and Piper

(DN 126).  For the following reasons, the Court will grant Defendants' motion in part and deny it

in part and deny Plaintiff's motion.

**I.**

Plaintiff's complaint raised various claims related to his incarceration at the Allen County

Detention Center (ACDC) while a pretrial detainee.  Several claims were dismissed on initial

screening pursuant to 28 U.S.C. § 1915A; other claims were dismissed on a partial grant of

Defendants' prior motion for summary judgment; and several other claims were withdrawn by

Plaintiff.  The claims remaining in this case are Plaintiff's individual-capacity claims against

Defendants with regard to Plaintiff's federal equal-protection claims, retaliation claims,

Fourteenth Amendment claim related to cruel and unusual punishment, his civil conspiracy

claim, and his state law claim of intentional infliction of emotional distress.  The particulars of

each remaining claim will be discussed below in the analysis of the summary-judgment motions,

as necessary.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id*.  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

## III.

### *Plaintiff's motion for summary judgment*

Plaintiff claimed equal protection violations in the form of being denied a television, hot pot, new mattress, and not being allowed to attend AA/NA meetings.  Plaintiff states in his

summary-judgment motion that he spent his entire time incarcerated in administrative segregation cell 165 while he was at ACDC.  He states that he was not allowed a hot pot or a television and that Defendants state that this was so because there are no electrical outlets in cell 165.  Plaintiff argues that under the ACDC administrative segregation policy inmates in administrative segregation shall receive all privileges granted to general population inmates.  He further argues that because Defendants easily could have provided Plaintiff with a television and hot pot there was no rational basis for the difference in treatment.  In particular, he asserts that there was an electrical outlet within a few feet of cell 165's door, and, therefore, electricity easily could have been provided.  Plaintiff's motion for summary judgment does not address his other still-pending claims.

In their response (DN 131), Defendants adopt and incorporate their reasoning as to why they are entitled to summary judgment on this claim as set forth in their summary-judgment motion.  Therefore, Plaintiff's motion for summary judgment will be considered in the discussion of Defendants' summary-judgment motion below.

### *Defendants' motion for summary judgment*

#### *Defendant Francis*

Defendants argue that summary judgment in favor of Defendant Francis is appropriate because all the claims against him involve the November 6, 2014, incident, the claims about which have been dismissed.[1]  Plaintiff agrees that Defendant Francis should be dismissed. Accordingly, the Court will grant Defendants' motion with regard to Defendant Francis.

---

[1] Plaintiff's claims arising directly from being held in a restraint chair for seven hours from the evening of November 6 to the early morning hours of November 7, 2014, were dismissed for failure to exhaust administrative remedies.  *See* DN 81.  The night of November 6-7 fell between the two days of Plaintiff's criminal trial.

*Intentional infliction of emotional distress claim*

Defendants argue that Plaintiff cannot meet the standard for a state-law claim of intentional infliction of emotional distress.  Plaintiff agrees that the intentional infliction of emotional distress claim must be dismissed because it arose directly from the November 6th incident.  Accordingly, the Court will grant Defendants' motion for summary judgment as to the intentional infliction of emotional distress claim.

*Equal protection claims*

Defendants argue that Plaintiff's equal protection claims fail as a matter of law because Plaintiff does not allege that he is part of a protected class.  They further argue that a class-of-one claim fails because he cannot show that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Defendants point out that Plaintiff requested to be housed in administrative segregation.  Defendants also argue that Plaintiff was not singled out because, in fact, every inmate in the protective custody cell (cell 165) was treated the same.  For instance, no prisoner in cell 165 had a television or a hot pot because there was no electrical outlet in that cell.  Similarly, Plaintiff was not alone in not receiving a new mattress because no inmates in cell 165 received a new mattress.  Defendants argue that no equal protection violation occurred with regard to denial of AA/NA meeting because, per Defendant Piper's answer to interrogatories, there were no AA/NA meetings held during Plaintiff's confinement at ACDC.  According to Defendant Piper's discovery response, at the pertinent times, there were no volunteers to conduct such meetings.

As he did in his summary-judgment motion, Plaintiff's response to Defendants' summary-judgment motion argues that Defendants are wrong that there is a rational basis for not

giving inmates in cell 165 a hotpot or television because installing an outlet in cell 165 would have been easy.

With regard to his claim about not receiving a mattress, Plaintiff states that he is still waiting to contact witnesses who can testify to that fact.  Plaintiff points out that his complaint stated that no inmates in cell 165 got a mattress.

Plaintiff states that he is waiting for the Court to rule on his request to order Defendants to divulge the identity of individuals who held AA/NA meetings at the jail.  He asserts that he and other witnesses "clearly heard the jail staff at ACDC announce that the meetings were being held and inquired of the individual cells if those inmates would like to attend.  Plaintiff requested to attend, in front of witnesses, and was informed by jail staff that inmates in cell 165 were not allowed to attend A.A./N.A. meetings."

Although Plaintiff has several motions to compel and extend discovery pending, the Court finds that additional discovery is not required on this claim before ruling on the summary-judgment motion because Plaintiff's requested discovery is not relevant to his claim.  It is clear from motions and discovery material filed by Plaintiff and Defendants that, as will be set out below, Plaintiff's claims of equal protection fail because he is claiming that *no* segregation inmates (*i.e.*, cell 165 inmates) received the privileges about which he complains.

"The Equal Protection Clause prohibits states from 'mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'"  *Coleman v. Governor of Mich.*, 413 F. App'x 866, 877 (6th Cir. 2011) (per curiam) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997)).  Each prohibited situation will be considered below.

5

First, access to amenities like a television, hot pot, or a new mattress is not a fundamental right. *See, e.g.*, *Elliott v. Brooks*, Nos. 98-1470, 98-8032, 1999 WL 525909, at *1 (10th Cir. 1999) (holding no constitutional right to watch television in prison); *Miller v. Scaturo*, No. 815CV02707HMHJDA, 2016 WL 3951668, at *6 n.8 (D.S.C. June 30, 2016), report and recommendation adopted, No. CV 8:15-2707-HMH-JDA, 2016 WL 3941074 (D.S.C. July 21, 2016) ("[T]o the extent Plaintiff alleges an equal protection claim with respect to state prisoners being allowed to purchase a television, hot pot, and reading lamp, . . . access to these items 'is of no constitutional import.'"  (citing *Scott v. Edwards*, No. 8:07-2046-MBS, 2008 WL 2856958, at *4 (D.S.C. July 21, 2008)).

Similarly, Plaintiff has no constitutional right to attend AA or NA meetings.  "[T]he law is well settled that an inmate has no constitutional right to participate in a rehabilitative program." *Phillips v. McKie*, No. CA 2:10-2956-HFF-BHH, 2011 WL 1326328, at *4 (D.S.C. Feb. 15, 2011), report and recommendation adopted, No. CIV.A. 2:10-2956-HFF, 2011 WL 1322867 (D.S.C. Apr. 6, 2011); *see also Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (holding no liberty or property interest in a rehabilitative program); *Sykes v. Carl Perkins Rehab. Ctr.*, No. 96-5837, 1997 WL 572893, at *1 (6th Cir. Sept. 1, 1997) (holding no liberty or property interest in federally funded prisoner rehabilitation program).

Second, "[p]risoners are not a suspect class . . ., nor are prisoners placed in administrative segregation vis-a-vis general population prisoners[.]" *Coleman v. Governor of Mich.*, 413 F. App'x at 877 (internal citations omitted).  In other words, "prisoners in the general population are not similarly situated to those in administrative segregation." *Harris v. Caruso*, No. 2:06-CV-198, 2006 WL 2521403, at *12 (W.D. Mich. Aug. 30, 2006).

6

The third situation prohibited by the Equal Protection Clause – being intentionally treated differently from other similarly situated prisoners without any rational basis for the difference – also does not exist in this case.  Here, "[P]laintiff cannot show an equal protection violation because . . . he is being treated exactly the same way as every other protective segregation prisoner."  *Adkins v. Jones*, No. 206-CV-26, 2007 WL 397044, at *3 (W.D. Mich. Feb. 1, 2007).

The Court notes that Plaintiff also argues that inmates in cell 165 are mandated not only by the Equal Protection Clause but also by ACDC administrative policy to receive all privileges as other ACDC inmates.  However, an alleged violation of a state law or regulation is insufficient to state a claim under § 1983.  *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989).

Consequently, the Court finds that Plaintiff's motion for summary judgment should be denied and that Defendants' motion for summary judgment should be granted with regard to Plaintiff's equal protection claims.

### Conspiracy claims

Plaintiff's complaint alleged that Defendants Piper, Pierce and Hollars agreed to keep Plaintiff "in the restraint chair, even though it was unnecessary, to disrupt the plaintiff's ability to perform at trial, enhanced by depriving plaintiff of a haircut days before and an opportunity to groom hisself the morning of Nov. 7th."  He further alleged that Defendant Piper took him "straight to court from the drunk tank without giving plaintiff the opportunity to comb his hair or brush his teeth or prepare hisself to be in the presence of the jury."  He alleged that these actions constituted a civil conspiracy.

Defendants argue that, whether Plaintiff's conspiracy claim is intended to be one under federal law or state law, they are entitled to summary judgment.  Defendants contend that

Plaintiff's federal civil conspiracy claim fails because most of his allegations regarding conspiracy had to do with the November 6th incident, the claims about which have been dismissed.  They argue that all that is left are Plaintiff's bare allegations of an agreement between Defendants to deprive him of a haircut and an opportunity to groom himself before his criminal trial.  They assert that Plaintiff does not allege a link between Defendant Piper, whom Plaintiff alleges was "close acquaintances" with the victim and his family, and the other Defendants.  They also argue that there was no overt act because Defendant Piper has denied that Plaintiff requested a haircut and was refused.  Defendants argue that there is also no proof of a corrupt or unlawful combination or agreement between Defendants as required for a state-law claim of civil conspiracy.

In his response, Plaintiff argues that his complaint alleged that "the plan was to disrupt Plaintiff's ability to perform at, and/or have a fair trial."  According to Plaintiff, "[t]he only plausible explanation for Plaintiff being kept in the restraint chair for seven (7) hours is because he was currently attending his criminal jury trial and the misuse of the restraint chair would negatively effect the Plaintiff at the trial."  Plaintiff argues that Defendants Piper, Pierce, and Hollars shared the conspiratorial objective of keeping Plaintiff in the restraint chair for an unreasonable amount of time.  He also argues that keeping him in the restraint chair until a few hours before his trial constituted an overt act in furtherance of the conspiracy.  He further argues that simply because his claim regarding being placed in the restraint chair was dismissed does not mean that it cannot form part of his conspiracy claim.

The Sixth Circuit has outlined the elements of a federal § 1983 civil rights conspiracy claim as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary

> to find the existence of a civil conspiracy.  Each conspirator need not have known
> all of the details of the illegal plan or all of the participants involved.  All that
> must be shown is that there was a single plan, that the alleged coconspirator
> shared in the general conspiratorial objective, and that an overt act was committed
> in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  "'It is well settled that conspiracy claims

must be pled with some degree of specificity and that vague and conclusory allegations

unsupported by material facts will not be sufficient to state such a claim under § 1983.'"

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d

1534, 1538 (6th Cir. 1987)).

A civil conspiracy under Kentucky law is "a corrupt or unlawful combination or

agreement between two or more persons to do by concert of action an unlawful act, or to do a

lawful act by unlawful means."  *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002)

(internal quotation marks and citation omitted).  "[T]he burden is on the party alleging that a

conspiracy exists to establish each and every element of the claim in order to prevail."  *Id.* at

896.  It is not enough to simply show a corrupt or unlawful combination or agreement because

"there is no such thing as a civil action for conspiracy."  *Id.* at 897.  Rather, "the action is for

damages caused by acts committed pursuant to a formed conspiracy."  *Id.*  Furthermore, "civil

conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff

may recover from multiple defendants for an underlying tort."  *Stonestreet Farm, LLC v.*

*Buckram Oak Holdings, N.V.*, No. 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. Ct.

App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887,

888 (1945)).  Thus, if a claim for the underlying tort fails, so does the claim for civil conspiracy.

*Id.* at *14 (holding that because defendants were granted summary judgment on the plaintiff's

underlying tort claim, the plaintiff's "claim of civil conspiracy [had] no tort to be based upon and [could not] survive as a matter of law.").

Plaintiff argues that his claim for civil conspiracy is based upon being kept in the restraining chair for seven hours. Although Plaintiff argues in his response that the "evidence shows that Plaintiff should not have initially been restrained," the evidence Plaintiff attaches to his response supports the opposite view. The ACDC log attached by Plaintiff states that at 9:40 pm of November 6, 2014:

> Inmate William Madden requested a phone card. We only do phone cards one time in the afternoon in which Madden did purchase a phone card at that time. Inmate Madden then became very violent in cell 165 and was hitting the door so hard that he actually broke the glass in the cell door.[2] We called dispatch for assistance. Officers Tabor and Francis came over to assist. Madden was then cuffed and brought to booking and placed in restraint chair. After officers left I was checking on Madden and he turned and spit on me, I then placed a spit shield on subject.

Moreover, also attached to Plaintiff's response is a transcript of a recorded interview with Defendant Pierce explaining that on the night in question the ACDC called to have officers sent over from the Sheriff's Department and the Police Department to extract Plaintiff from his cell following his outburst. In that interview, which took place because Defendant Pierce filed an assault charge against Plaintiff, Defendant Pierce explained that during Plaintiff's outburst, Plaintiff had "screwed off" a "shower nozzle [and] was just throwing it really, really hard and hitting the door with it." Defendant Pierce explained that Plaintiff needed to be placed in the restraint chair so as not to be put back in the cell with other inmates. He stated, "You know you had other inmates in there, if he would have hit one of those other inmates, it could have killed [th]em." Defendant Pierce explained that although Plaintiff was not combative at the time he was put in the restraint chair he was "mouthy" and ACDC had had a previous situation with

---

[2] As shown by other attachments, Plaintiff broke the glass with a shower nozzle he had removed.

Plaintiff.  According to Defendant Pierce, "We knew Mr. Madden['s] history, we knew how he was subject to pretty much go off at a split second.  You just never know about him, he could talk to you one minute and go off the next."  Defendant Pierce also explained how, after Plaintiff was in the restraint chair, he did a standard safety check on him, at which time Plaintiff spat on him.  Defendant Pierce further explained that at that time, he "thought well, that's pretty good when a man says he has hepatitis and he wants to spit on you, like I said, I've dealt with different people, come in intoxicated and things, but, Mr. Madden was stone cold sober.  And uh, he wasn't going completely irate at that time, he knew what he was doing when he spit on me."  Defendant Pierce stated that he knew from the booking information that Plaintiff has Hepatitis C.  For this reason, Defendant Pierce filed a third-degree assault charge against Plaintiff.  Thus, the Court finds that Plaintiff's assertion that he should not have been put in the restraint chair falls flat based on his own attachments to his response to Defendants' summary-judgment motion.

Further, Plaintiff's assertion that Defendants Piper, Pierce, and Hollars shared the conspiratorial objective of keeping him in the restraint chair for an unreasonable amount of time is purely conclusory.  *See, e.g.*, *Perry v. Wellington*, No. 98-4215, 1999 WL 1045170, at *2 (6th Cir. Nov. 9, 1999) (holding conclusory assertions are insufficient for purposes of surviving summary judgment).  Plaintiff offers no evidence that once he was in the restraint chair the three Defendants agreed to keep him there longer than he needed to be.  In fact, the evidence submitted by Plaintiff shows that, even after he was in restraint chair, he spit on Defendant Pierce, resulting in Plaintiff being charged with assault.  Additionally, Plaintiff's own evidence shows that Defendant Pierce knew from prior experience with Plaintiff that he could "pretty much go off at a split second," suggesting that Plaintiff's own actions and not a conspiracy by Defendants were the reason he was kept in the restraint chair.  Nor does the evidence show that

11

Defendants conspired to interfere with his criminal trial by denying him a haircut and not giving him a chance to brush his teeth or comb his hair before his second day of trial.  Defendants are entitled to summary judgment on this claim under either federal or state law.

*Retaliation claims*

Plaintiff's complaint alleged that the victims of the crime of which he was accused were "close personal friends" of Defendant Piper.  He alleged that he was denied a haircut two days before his trial and that he believed that his unkempt appearance had a negative impact on the jury.  He alleged, "Considering the importance of a neat appearance of the accused at a criminal jury trial and a lack of penalogical interest in denying the haircut, [Defendant Piper] used this as a means of retaliation and a way to put me under duress during the trial process.  Plaintiff claims that defendant Piper engaged in the retaliatory conduct because plaintiff chose to proceed with a trial by jury instead of accepting a plea offer made earlier that day."

Defendants argue that committing crimes against a friend of a defendant is not protected conduct.  Defendants acknowledge that Plaintiff's decision to have a jury trial is protected conduct but argue that the denial of his request for a haircut two days before trial is not sufficient to support a retaliation claim because it would not deter a person of ordinary firmness from continuing to engage in the protected conduct.  They also point to Plaintiff's own allegations in his complaint that demonstrate that he was given an opportunity for a haircut several days before his subsequent request.

In response, Plaintiff states that he is aware that criminal activity is not conduct protected by the Constitution but that because the victims "were personal friends of Piper, it was a motivating factor in the act of retaliation in response to Plaintiff exercising his constitutional rights to a jury trial, which is protected conduct and fulfills the first element of Plaintiff's

12

retaliation claim." He argues that having to go to trial with uncut hair and being unkempt after seven hours spent in the restraint chair was an adverse action because Plaintiff "being of at least average intelligence, was well aware that a jury could base their verdict solely on the Plaintiff's physical appearance at trial." He further argues that it is clear that the adverse action was motivated by the protected conduct "because there is no other rational explanation for the 'adverse actions', especially considering the timing of those actions in relation to the Plaintiff's protected conduct, than being in response to Plaintiff choosing to exercise his right to trial."

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, Plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Not every action is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 396. "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. at 674. The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

As Defendant points out, Plaintiff's own complaint established that he had an opportunity to have his hair cut several days prior to his request on November 4, 2014, for his trial scheduled to start on November 6, 2014. Plaintiff's complaint stated that he had not had a hair cut in nine

13

months and that he believes his unkempt appearance at trial had a negative impact on the jury. Yet, he does not explain why he did not take advantage of the opportunity to have his hair cut shortly before his scheduled trial.

Further, among Plaintiff's attachments was a copy of a complaint he filed with the Kentucky Bar Association.  According to the attachment, his attorney told him it did not matter that he had not had a haircut, that he looked fine, and would not move for a mistrial.  Thus, his own attachments show that Plaintiff's trial attorney did not think that his appearance was a problem for his trial.

The Court finds that the denial of the haircut was not sufficiently adverse to deter a person of ordinary firmness from exercising his right to trial.

Furthermore, as discussed above, the evidence Plaintiff submitted shows that the need for the restraint chair on the night before his second day of trial was precipitated by his own actions of breaking the glass in his cell with a shower nozzle and then spitting on Defendant Pierce after being placed in the restraint chair, for which Defendant Pierce filed assault charges against Plaintiff.  Therefore, the Court finds that no adverse action was taken against Plaintiff.

Nor does the Court find that a reasonable person would have been deterred from exercising their right to trial if he had been refused a haircut and had been denied sleep due to being in restraint chair.  The Court finds that Plaintiff has not produced evidence of a genuine issue of material fact, and Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

*Cruel and unusual punishment claim*

Defendants argue that Plaintiff cannot show that he suffered cruel and unusual punishment in not being allowed access to the bullpen because in fact he was permitted access to

14

the bullpen daily, weather permitting, at the same time as the other cell 165 inmates. They point to answers to interrogatories by Defendant Piper as support. In response to the interrogatory asking, "From March 15, 2014, when was the first day the inmates in cell #165, William Madden in particular, were allowed time outside in the bullpen of the jail?" Defendant Piper responded, "Defendant is unaware of the exact date, however, Plaintiff was permitted access to the bullpen daily, weather permitting, at the same time as the other inmates housed in cell #165." Further, Defendants argue that Plaintiff has not alleged that they disregarded an excessive risk to his health or safety.

With regard to this claim, Plaintiff states that he is still waiting on the jail log entries to show that Plaintiff and the other cell 165 inmates were not allowed to use the bullpen for four months. He further argues that the Court may infer the subjective state of mind of Defendants in denying all exercise for four months as the risk of harm is obvious.

Pursuant to Rule 56(d), a party opposing a motion for summary judgment is allowed to state that he is unable to present facts essential to justify the party's opposition and, in that situation, the district court may permit further discovery so that the non-moving party can adequately oppose the motion for summary judgment. *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). Here, Plaintiff has pointed out that he has filed a motion (DN 101) to compel Defendants to produce the daily jail logs to show when he was let out for recreation. That motion is still pending. Plaintiff also has filed a motion to compel (DN 119) for Defendants to provide more complete answers to various discovery requests, including the answer to the interrogatory relied on by Defendants in their summary-judgment motion. Plaintiff has adequately explained the need for further discovery. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("[T]he non-movant must file an

affidavit pursuant to Fed. R. Civ. P. [56(d)] that details the discovery needed, or file a motion for additional discovery.").  The Court finds that summary judgment on this issue should be denied at this time so that further discovery may be had.

**IV.**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (DN 121) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to the claims against Defendant Francis, the claim of intentional infliction of emotional distress, the equal protection claims, the retaliation claim, and the conspiracy claim and **DENIED** with respect to the cruel and unusual punishment claim.

The Clerk of Court is **DIRECTED** to terminate Defendant Francis as a party to this action.

Date:  December 5, 2016

**Greg N. Stivers, Judge**
**United States District Court**

cc:      Plaintiff, *pro se*
          Counsel of record
4416.009

16
